# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL LOYD *et al.*, | ) CASE NO. 4:23-cv-00626 |
| | ) |
| Plaintiffs, | ) JUDGE SARA LIOI |
| | ) |
| vs. | ) |
| | ) |
| NORFOLK SOUTHERN RAILWAY COMPANY, *et al.*, | ) **DEFENDANTS' MOTION TO DISMISS** |
| | ) |
| Defendants. | ) |

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Norfolk Southern Railway Company and Norfolk Southern Corporation (collectively, "Norfolk Southern") respectfully request that the Court dismiss Plaintiffs' action against them. Norfolk Southern is entitled to dismissal because Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

Respectfully submitted,

DICKIE, MCCAMEY & CHILCOTE, P.C.

By: /s/ Scott D. Clements
    J. Lawson Johnston, Esquire
    Scott D. Clements, Esquire

    Two PPG Place, Suite 400
    Pittsburgh, PA 15222
    (412) 281-7272

    Counsel for Defendants,
    Norfolk Southern Railway Company
    and Norfolk Southern Corporation

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL LOYD *et al.*, | ) CASE NO. 4:23-cv-00626 |
| | ) |
| Plaintiffs, | ) JUDGE SARA LIOI |
| | ) |
| vs. | ) |
| | ) |
| NORFOLK SOUTHERN RAILWAY | ) |
| COMPANY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

This lawsuit relates to a train derailment on February 3, 2023, in East Palestine, Ohio, that caused a release of hazardous materials. State and Federal authorities responded to the incident and—under the Federal government's governing unilateral administrative order—are directing Norfolk Southern's environmental response actions at the site.

Plaintiffs' Complaint seeks declaratory judgment under Section 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9613(g)(2), for the recovery of response costs associated with the derailment site. To obtain declaratory relief under Section 113(g) of CERCLA, a claimant must first maintain a valid claim under Section 107 of CERCLA. In their Complaint, Plaintiffs do not, and cannot, allege facts adequate to support a claim for cost recovery under Section 107 of CERCLA. Accordingly, Norfolk Southern respectfully requests that this Court dismiss Plaintiffs' Complaint.

**BACKGROUND**

Plaintiffs' Complaint alleges that on February 3, 2023, at least 38 rail cars derailed, including at least eleven rail cars that contained hazardous materials, in East Palestine, Ohio.

Compl. ¶¶ 54, 55. The derailment resulted in a fire that prompted a local evacuation order enacted by the Village of East Palestine. *Id.* ¶ 72. Two days later, rising temperatures were detected in one of the tank cars at the site. *Id.* ¶ 75. On February 6, 2023, a controlled vent and burn of five tank cars was performed in a flare trench to prevent an uncontrolled explosion. *Id.* ¶ 76. This prompted an expansion of the local evacuation order to a two- by one-mile radius. *Id.* ¶ 81.

    A.    **USEPA Unilateral Administrative Order**

On February 21, 2023, the United States Environmental Protection Agency ("USEPA") issued a Unilateral Administrative Order for Removal Actions (the "Order") pertaining to the derailment site. CERCLA Docket No. V-W-23-C-004 (attached as Exhibit A).[1] The Order invokes USEPA's authority under CERCLA to compel a party potentially responsible for contamination to investigate and remediate a site at its own expense. *See* 42 U.S.C. § 9606(a). The Order issued to Norfolk Southern encompasses all response work that may be required under CERCLA covering the entire area that is the subject of Plaintiffs' Complaint. The Order defines the "Site" as:

> the areal extent of where hazardous substances have come to be located, in Ohio and Pennsylvania, as a result of the Norfolk Southern Railway Company train derailment that occurred on February 3, 2023, at the rail line northeast of East Taggart Street and North Pleasant Drive intersection in East Palestine, Columbiana County, Ohio (Latitude: 40.8360395 Longitude: 80.5222838) and the subsequent emergency response activities including, but not limited to, breached rail cars and the controlled "vent and burn" that occurred on February 6, 2023.

Order ¶ 6. The Order sets forth the following "[e]xpected boundaries for work [to be performed]":

(1)    For air, surface soil, interior and exterior home cleaning (1-mile x 2-mile evacuation area);
(2)    For surface water and sediments (length of the contaminated surface waters from unnamed ditch to the Ohio River);
(3)    For subsurface soils and groundwater (perimeter of and within the areal extent of derailment location); and

---

[1] The Order is a "matter[] of public record" and thus "may be taken into account" in considering a motion to dismiss. *See Meyers v. Cincinnati Bd. of Educ.*, 983 F.3d 873, 880 (6th Cir. 2020) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

>    (4)  Drinking water sources (1 mile radius from the derailment and a 250-foot buffer from the center line of the contaminated surface waters from unnamed ditch to the Ohio River).

Order ¶ 36(g).

The Order requires preparation and submission of a Removal Work Plan, Sampling and Analysis Plan, Health and Safety Plan, and Community Involvement Plan; includes specific reporting requirements, including progress reports and a final report; and mandates technical specifications for these deliverables. Order ¶¶ 36, 38, 39, 41, 44, 45. The Order imposes quality assurance requirements on sampling and data analysis; mandates access to property and information; and sets forth financial assurance and insurance requirements. Order ¶¶ 40, 47, 49, 54, 75, 76. The Order sets forth the following comprehensive "Work to be Performed":

> 36. In addition to the actions that it is currently performing, Respondent shall perform, at a minimum, all actions necessary to implement the following items. The actions to be implemented generally include, but are not limited to, the following:
>
>    a.  In conjunction with other federal, state and local agencies, Respondent shall participate in all required elements of the Site's response organization structure (Incident Command System) as established and coordinated by the OSCs;
>
>    b.  Develop and implement a Security Plan;
>
>    c.  Develop and implement an air monitoring and sampling plan for:
>        (1) Indoor air of occupied structures;
>        (2) Perimeter community air monitoring at any remediation areas;
>
>    d.  Develop and implement a plan for the identification and delineation of the extent of contamination for:
>        (1) Surface and subsurface soils;
>        (2) Surface waters and sediments;
>        (3) Groundwater;
>        (4) Drinking water sources;
>
>    e.  Develop and implement a plan for the containment and remediation of contaminated surface and sub-surface soils, surface waters and

3

    sediments, groundwater (including private, municipal, agricultural wells);

  f. As of the date of issuance of this Order, EPA expects to clean up dust and debris in the interior and exterior of buildings resulting from the February 3, 2023, train derailment and subsequent fires upon request. If at a later date EPA determines that it is appropriate for Respondent to take over this task, Respondent will be required to develop and implement a plan for these cleanup activities;

  g. [Expected boundaries for work to be performed, *supra*, at 2-3]

  h. Remove, secure, stage, consolidate, package, transport, and dispose of identified hazardous substances, pollutants, and contaminants at EPA-approved disposal facilities in accordance with EPA's Off-Site Rule 40 C.F.R. § 300.400; and

  i. Taking any response action to address all releases or threatened releases which EPA determines may pose an imminent and substantial endangerment to the public health or the environment.

Order ¶ 36.

  **B.** **Norfolk Southern's Family Assistance Center**

In February 2023, Norfolk Southern promptly set up a Family Assistance Center for East Palestine residents impacted by the evacuation orders. Norfolk Southern has "distribut[ed] direct financial assistance to impacted families and businesses to cover costs related to the evacuation, including reimbursements and cash advancements for *lodging, travel, food, clothes, and other related items*," provided bottled water, and established numerous funding mechanisms available immediately to the community. *See* https://nsmakingitright.com/east-palestine-community-update-on-environmental-monitoring-assistance-feb-16/ (accessed May 4, 2023) (emphasis added); *see also* https://www.epa.gov/east-palestine-oh-train-derailment/resources-affected-residents (accessed May 4, 2023) (identifying and linking to the FAC website); https://www.pema.pa.gov/derailment/Pages/default.aspx (accessed May 3, 2023) (identifying and linking to FAC website and providing link to online claim form under "Resources from Norfolk

4

Southern"); https://www.epa.gov/east-palestine-oh-train-derailment/daily-updates#feb423 (accessed May 4, 2023).[2] Thus far, Norfolk Southern has committed more than $31 million in community support.

### C. Federal And State Actions, Putative Class Actions, And This Lawsuit

The U.S. Department of Justice and the State of Ohio have filed civil actions against Norfolk Southern asserting claims under CERCLA, in addition to other federal and state environmental laws. *Ohio v. Norfolk Southern Corp.*, No. 23-cv-00517 (N.D. Ohio Mar. 14, 2023); *United States v. Norfolk Southern Ry.*, No. 23-cv-00675 (N.D. Ohio Mar. 30, 2023).[3]

The Plaintiffs here have also filed a class action complaint which was consolidated with 30 other cases, alleging Ohio common-law claims, statutory nuisance, strict liability, medical monitoring, and willful and wanton misconduct. *Loyd v. Norfolk Southern Railway Company*, No. 4:23-cv-00634 (N.D. Ohio Mar. 24, 2023).

Although Plaintiffs' Complaint here seeks damages for their response costs, Plaintiffs have not alleged they have any obligation or authority to perform any removal or remediation work, or incur any response costs, associated with the derailment site. The Complaint fails to include any information regarding the timing or amount of any alleged response costs.

### ARGUMENT

### I. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under

---

[2] Although not dispositive to this motion, the existence of the FAC is a matter of public record, identified on multiple government-controlled websites; therefore, the Court may take judicial notice of its existence. *See Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017) (considering a video with verifiable facts central to the claim).

[3] The other litigation about the derailment is a "public record" and may also be considered. *See New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

some viable legal theory." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (quoting *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007)). A plaintiff must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Although the Court must construe the complaint in a light most favorable to the plaintiff and accept all factual allegations as true, *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 228 (6th Cir. 2005), that rule "is inapplicable to legal conclusions," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Consequently, the Court need not accept as true "legal conclusions or unwarranted factual inferences." *Theile v. Michigan*, 891 F.3d 240, 243 (6th Cir. 2018).

## II. PLAINTIFFS' CERCLA CLAIM SHOULD BE DISMISSED

Congress enacted CERCLA, as amended by the 1986 Superfund Amendments and Reauthorization Act, "'to protect and preserve public health and the environment' by facilitating expeditious and efficient cleanup of hazardous waste sites." *Hanford Downwinders Coalition v. Dowdle*, 71 F.3d 1469, 1474 (9th Cir. 1995) (citation omitted). Generally, CERCLA "facilitates cleanup and remediation of contaminated lands, and shifts the financial burden of such environmental response actions to the parties responsible for releasing hazardous substances." *McGlone v. Centrus Energy Corp.*, 2020 U.S. Dist. LEXIS 135784, at *21 (S.D. Ohio July 31, 2020) (quoting *ITT Indus. v. BorgWarner, Inc.,* 506 F.3d 452, 456 (6th Cir. 2007)). "Under CERCLA, the Federal Government may clean up a contaminated area itself, or it may compel responsible parties to perform the cleanup." *Cooper Indus., Inc. v. Aviall Servs., Inc.* 543 U.S. 157, 161 (2004) (citations omitted).

6

Section 106(a) of CERCLA allows USEPA to issue a unilateral administrative order compelling a party potentially responsible for the contamination, such as a current or former owner or operator, to investigate and remediate a site at its own expense. 42 U.S.C. § 9606(a). For situations where remediation has already occurred, CERCLA establishes two types of claims to recover costs related to cleanup and remediation of contaminated sites. First, a cost recovery action under Section 107 allows an innocent party (sometimes the government itself) to recover the costs of cleanup from a potentially responsible party. 42 U.S.C. § 9607; *see Acushnet Co. v. Mohasco Corp.*, 191 F.3d 69, 74 (1st Cir. 1999). Second, under Section 113(f), a responsible party may seek contribution from other responsible parties for the costs of cleanup. 42 U.S.C. § 9613(f); *United States v. Atlantic Research Corp.*, 551 U.S. 128, 132 (2007). Plaintiffs bring their lawsuit under Section 107(a), seeking response costs they have allegedly already incurred, and Section 113(g)(2), seeking a declaratory judgment that they are entitled to recover any future response costs they incur.

Here, as described, USEPA has issued a unilateral Order pursuant to Section 106(a) to Norfolk Southern requiring investigation and remediation of the site. The Order sets forth a broad scope of response work to be performed and specific requirements governing performance of that work. Pursuant to the Order, USEPA has oversight and approval authority. Norfolk Southern is performing the remediation work at its own expense under federal and state oversight. In addition, the federal and state governments have filed civil complaints against Norfolk Southern seeking their response costs.

Plaintiffs, by contrast, have no responsibility to remediate the site. They do not allege they have any obligation or authority to perform any removal or remediation work at the site or to incur any response costs under CERCLA. Nor do they allege specific facts supporting a claim that they

7

have, in fact, incurred any such costs. As a result, their Complaint fails to state a claim and should be dismissed.

> A. **Plaintiffs Do Not Allege Facts to Support a CERCLA Section 107 Cost Recovery Claim**

Section 107(a) allows any party to recover "any … necessary costs of response." 42 U.S.C. § 9607. A prima facie case for cost recovery under Section 107(a) has four elements: (1) the site is a "facility"; (2) a release or threatened release of a hazardous substance has occurred; (3) the release has caused the plaintiff to incur "necessary costs of response" that are consistent with the National Contingency Plan ("NCP"); and (4) the defendant falls within one of the four categories of potentially responsible parties. *Regional Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 703 (6th Cir. 2006); *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344, 347-48 (6th Cir. 1998), *abrogation on other grounds recognized by Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 758 F.3d 757, 773-74 (6th Cir. 2014). Under CERCLA, "response" is defined as "remove, removal, remedy, and remedial action." 42 U.S.C. § 9601(25). In turn, CERCLA defines "remove" and "removal" as:

> the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release. The term includes, in addition, without being limited to, security fencing or other measures to limit access, provision of alternative water supplies, [and] temporary evacuation and housing of threatened individuals not otherwise provided for….

*Id.* § 9601(23). CERCLA defines "remedy" and "remedial action" as:

> those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous

8

>   substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment.

*Id.* § 9601(24). Thus, "response" costs are the costs of site cleanup, including removal of hazardous substances, monitoring and evaluation, prevention of further release, and certain temporary costs for affected individuals.

Plaintiffs fail to plead specific facts which, if true, would establish the third element of a prima facie case for CERCLA recovery—that they have incurred "necessary costs of response" that are consistent with the NCP. In order to satisfy this element, alleged response costs must be both "necessary" *and* "consistent with the NCP." The allegations in the Complaint about costs Plaintiffs have incurred lack specificity and also fail to plausibly allege consistency with the NCP. Plaintiffs' bare statement of alleged "response costs" is too cursory and devoid of specific facts to satisfy this essential element of a CERCLA claim.

Specifically, in Paragraph 112, Plaintiffs allege that they "incurred costs in response to the derailment and release and/or threatened release of hazardous substances," including "cost of evacuation, temporary relocation, housing, alternate water supply, attorney's fees and investigative costs (relating to cleanup, technical services and identifying PRP), and consultant investigative and response costs." Compl. ¶ 112. Plaintiffs then cursorily allege that, "[a]s a direct and proximate result of the derailment of Norfolk Southern Train 32N and the individual rail cars comprising the train, Plaintiffs have been exposed to hazardous substances at or around the Site and *have incurred and will continue to incur response costs*." Compl. ¶ 122 (emphasis added).

9

These bare allegations do not state a viable claim for cost recovery under CERCLA Section 107 because the allegations do not identify any (1) "necessary response costs" that are (2) consistent with the NCP.[4]

    1.    <u>Plaintiffs Do Not Allege Necessary Response Costs</u>

Because CERCLA does not define "necessary," courts have applied varying standards. *See Courtland Co. v. Union Carbide Corp.*, 2022 US Dist. LEXIS 116798 (S.D. W.V. July 1, 2007) (summarizing separate standards for "necessary" applied by courts). In some instances, courts may consider costs to be "necessary" if "incurred in response to a threat to human health or the environment." *Regional Airport Auth. of Louisville*, 460 F.3d at 703. In other circumstances, courts require that for response costs to be considered "necessary" there must be "some nexus" between the alleged response costs and "the <u>actual cleanup</u> of hazardous releases." *Young v. United States*, 394 F.3d 858, 863 (10th Cir. 2005) (emphasis in original). "[L]egal fees and litigation-related costs" cannot be recovered because they are not costs to remediate a contaminated site and thus not response costs. *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 482 (6th Cir. 2004); *Krygoski Constr. Co. v. City of Menominee*, 431 F. Supp. 2d 755, 766 (W.D. Mich. 2006) ("Fees for expert witnesses are not compensable under CERCLA unless they are a necessary part of remediating a site and closely related to the cleanup.").

Here, the Complaint makes no attempt to describe any response costs Plaintiffs incurred, much less to justify their necessity under any standard. Plaintiffs' allegation that they incurred the

---

[4] As set forth herein, the Complaint must be dismissed as a matter of law because Plaintiffs do not allege costs sufficient for a valid CERCLA Section 107(a) claim. But Plaintiffs also cannot reasonably dispute the verifiable public information that establishes that Plaintiffs did not, or at least did not need to, incur the costs alleged in the Complaint. It is well-known and part of the public record that Norfolk Southern has provided mechanisms, such as the FAC, for reimbursement of costs associated with evacuation, relocation, temporary housing, and alternative water supplies to East Palestine residents, such as Plaintiffs. *See* https://nsmakingitright.com/ (accessed May 4, 2023); *see also* https://www.epa.gov/east-palestine-oh-train-derailment/resources-affected-residents (last updated and accessed May 4, 2023); https://www.pema.pa.gov/derailment/Pages/default.aspx (accessed May 4, 2023).

"cost of evacuation, temporary relocation, housing, [and] alternate water supply," Compl. ¶ 112, lacks the requisite specificity to "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555. They do not explain any specific nexus between the alleged costs and the release caused by the derailment, nor do they allege any reasons their alleged costs were not duplicative of Norfolk Southern's extensive response efforts at the Site pursuant to the Order. *See Waste Mgmt. of Alameda Cnty., Inc. v. E. Bay Reg'l Park Dist.*, 135 F. Supp. 2d 1071, 1099 (N.D. Cal. 2001) ("[C]ourts will deny recovery where the costs incurred were duplicative of other costs…."). Plaintiffs also fail to allege with any specificity what exactly the costs were or when they were incurred, beyond parroting the recoverable costs listed at 42 U.S.C. § 9601(23). This archetypical "threadbare recital[] of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, is insufficient to state a claim, *see Cook v. Rockwell Int'l Corp.*, 755 F. Supp. 1468, 1474-75 (D. Colo. 1991) (requiring plaintiffs to "specify at least one cognizable response cost" rather than "merely mirror[ing] the terms of the statute").

Plaintiffs' allegation that they incurred "attorney's fees and investigative costs (relating to cleanup, technical services and identifying PRP)" and "consultant investigative and response costs" fares no better. Compl. ¶ 112. Even investigative costs are recoverable only "as long as such costs are necessary and not merely conducted for litigation purposes." *Tennessee v. Roane Holdings Ltd.*, 835 F. Supp. 2d 527, 537 (E.D. Tenn. 2011). Where EPA or a potential responsible party has already initiated remedial investigations, investigative costs incurred by other private parties "are not considered necessary because they are duplicative." *McGlone,* 2020 U.S. Dist. LEXIS 135684, at *33; *Rolan v. Atl. Richfield Co.*, 427 F. Supp. 3d 1013, 1023 (N.D. Ind. 2019); *Wilson Rd. Dev. Corp. v. Fronabarger Concreters, Inc.*, 209 F. Supp. 3d 1093, 1112 (E.D. Mo. 2016). And "legal fees and litigation-related costs 'are not recoverable'; only 'work that is closely

11

tied to the actual cleanup … may constitute a necessary cost of response.'" *Roane Holdings Ltd.*, 835 F. Supp. 2d at 537 (quoting *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 482 (6th Cir. 2004)). Here, Plaintiffs make no specific allegations about the investigation costs they incurred, nor do they explain why those costs were necessary despite Norfolk Southern's response actions and EPA's extensive oversight and investigation.

        2.       <u>The Alleged Response Costs Are Not Consistent With The NCP</u>

Plaintiffs also do not allege that their alleged costs were consistent with the NCP, much less with the specificity CERCLA requires. In order to state a claim for relief under CERCLA Section 107, Plaintiffs must plead facts supporting that the alleged response costs incurred are "consistent with the [NCP]." 42 U.S.C. § 9607(a)(4)(B). Under 40 C.F.R. § 300.700(c)(3)(i), a private party's response action is considered "consistent with the NCP" if the action, when evaluated as a whole, is in substantial compliance with 40 C.F.R. § 300.700(c)(5) and (6) and results in CERCLA-quality cleanup. Section 300.700(c)(5) refers to provisions relating to, *inter alia*: worker health and safety; documentation and cost recovery; reports of releases; evaluation of removal and remedial sites; and operation and maintenance. 40 C.F.R. § 300.700(c)(6) mandates public participation, including providing opportunities for public comments, providing public information, and specific community relations throughout the cleanup process.

As with necessity, a party must allege specific facts to support consistency—a mere conclusory statement of consistency is inadequate. *See, e.g.*, *J&P Dickey Real Estate Family L.P. v. Northrop Grumman Guidance & Elecs. Co.*, 2012 U.S. Dist. LEXIS 36497, at *14 (W.D.N.C. Mar. 19, 2012) (holding that, absent factual allegations supporting claim that response costs were consistent with NCP, claim was subject to dismissal); *Gen. Cable Indus., Inc. v. Zurn Pex, Inc.*, 561 F. Supp. 2d 653, 658 (E.D. Tex. 2006) (dismissing CERCLA claim because plaintiff failed to

allege a factual basis for its conclusory allegation that it expended response costs consistent with NCP); *Francisco-Sanchez v. Esso Standard Oil de Puerto Rico, Inc.,* 2010 U.S. Dist. LEXIS 15165, at *10 (D.P.R. Feb. 22, 2010) (dismissing CERCLA claim where "statement is conclusory with respect to the manner in which such measure conforms with the NCP"). Here, Plaintiffs make no such factual allegations.

### B.     Plaintiffs Are Not Entitled to the Requested Declaratory Relief

"A plaintiff cannot obtain declaratory relief pursuant to [Section 113(g)(2)] without having incurred response costs within the meaning of [Section 107(a)(4)(B)]." *Trimble v. Asarco, Inc.*, 232 F.3d 946, 958-59 (8th Cir. 2000) (citing *In re Dant & Russell, Inc.*, 951 F.2d 246, 249-50 (9th Cir. 1991)), *overruled on other grounds by Exxon Mobile Corp. v. Allapattah Servs.*, 545 U.S. 546 (2005). CERCLA Sections 107 and 113 "envision that, before suing, CERCLA plaintiffs will spend some money responding to an environmental hazard. They can then go to court and obtain reimbursement for their initial outlays, as well as a declaration that the responsible party will have continuing liability for the cost of finishing the job." *In re Dant & Russell, Inc.*, 951 F.2d at 249-50. As a matter of law, a claim for declaratory relief cannot stand in the absence of a valid substantive cause of action. *Union Station Assocs. LLC v. Puget Sound Energy, Inc.,* 238 F. Supp. 2d 1226 (W.D. Wash. 2002); *Reichhold Chem, Inc. v. Textron, Inc.*, 888 F. Supp. 1116, 1124 (N.D. Fla. 1995).

As set forth above, Plaintiffs' Complaint fails to state a valid claim under Section 107(a), and therefore, the claim seeking declaratory relief under Section 113(g)(2) fails as a matter of law.

### <u>CONCLUSION</u>

Based upon the foregoing, Defendants Norfolk Southern Railway Company and Norfolk Southern Corporation, respectfully request that this Court dismiss Plaintiffs' Complaint.

14

        Respectfully submitted,

        DICKIE, MCCAMEY & CHILCOTE, P.C.

    By: /s/ Scott D. Clements
        J. Lawson Johnston, Esquire
        Scott D. Clements, Esquire

        Two PPG Place, Suite 400
        Pittsburgh, PA 15222
        (412) 281-7272

        Counsel for Defendants,
        Norfolk Southern Railway Company
        and Norfolk Southern Corporation

## **CERTIFICATE OF SERVICE**

  I hereby certify that on May 5, 2023, I filed the foregoing with the Clerk using the CM/ECF System, which will send notification of such filing to the following counsel of record:

Daniel N. Abraham, Esquire
David I. Shroyer, Esquire
Michael T. Rapier, Esquire
Colley Shroyer Abraham Co. LPA
536 South High Street
Columbus, OH 43215

D. David Altman, Esquire
Justin D. Newman, Esquire
Amy J. Leonard, Esquire
Altman Newman Co. LPA
18 East 8th Street, Suite 200W
Cincinnati, OH 45202

           DICKIE, McCAMEY & CHILCOTE, P.C.

           By: /s/ Scott D. Clements
              Scott D. Clements, Esquire

              Counsel for Defendants,
              Norfolk Southern Railway Company
              and Norfolk Southern Corporation